CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00764 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SGT. FULLER, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |        United States District Judge |
| Defendants. | ) | |

Plaintiff Christopher J. Davis, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against six corrections officers at Red Onion State Prison ("ROSP"). (*See* Compl. [ECF No. 1].) Defendants Sgt. Fuller, Correctional Officer ("C/O") Tipton, C/O Mills, C/O A.C. Robbins, and Lieutenant Barton (collectively, the "Moving Defendants") have jointly moved for summary judgment on Plaintiff's claims against them. (Defs.' Mot. for Summ. J. [ECF No. 35].) For the following reasons, the court will grant Moving Defendants' motion and enter summary judgment on their behalf.

**I.**

Plaintiff's claims stem from allegations that, on September 15, 2023, around 10:30 a.m., while incarcerated at ROSP, Plaintiff told an unknown sergeant that he felt like killing himself. (Compl. 3.) The sergeant removed Plaintiff from his cell, "took everything," and returned Plaintiff to his cell. (*Id.*) Plaintiff then asked the sergeant to call for a mental-health provider because he was not feeling like himself. (*Id.*) Plaintiff claims that he became lightheaded and passed out. (*Id.*) When he came to, he alleges he was being "shocked" by Officer D.N. Mills, had his hands pulled back by the sergeant he had spoken with, and was then punched and

kicked in his face. (*Id.*) Plaintiff alleges he sustained two black eyes during the altercation. (*Id.*) Plaintiff alleges that he was then put in leg restraints and removed from his cell by his legs by Officer Tipton and Officer A.C. Robbins. (*Id.*) He was also handcuffed, alleging that this was "when [his] finger was broken."[1] (*Id.*)

Thereafter, Plaintiff was seen by ROSP doctors, received "light treatment," and was sent to Norton Community Hospital for further treatment. (*Id.*) At the hospital, Plaintiff's finger was relocated, he received three stiches in his finger, and he was given a splint. (*Id.*) Plaintiff was then sent to the Carilion Clinic emergency department where an orthopedic specialist told him he would need surgery as soon as possible. (*Id.*) Three days later, Plaintiff was sent back to ROSP and was housed in the medical department and received medications to treat his pain and prevent infection. (*Id.*) On September 23, 2023, his stitches were removed. (*Id.*) On September 28, 2023, he was sent "back out" for x-rays and was again told that he would need surgery. (*Id.* at 3–4.) On October 2, 2023, he was referred to a hand specialist at Carilion for further treatment. (*Id.* at 4.)

In Plaintiff's complaint, he indicated that he had filed grievances regarding the facts in his complaint. (*Id.* at 1.) He alleged that his complaints were deemed "unfounded" and that he was denied any type of relief. (*Id.*)

The Moving Defendants now seek summary judgment under Federal Rule of Civil Procedure 56, arguing that Plaintiff failed to properly exhaust his administrative remedies regarding his claims against them. (*See* Memo. in Supp. of Defs.' Mot. for Summ. J. 11–14

---

[1] It is unclear from Plaintiff's complaint whether he alleges that his finger was broken during the altercation with the sergeant and Officer Mills or whether it broke when he was handcuffed. (*See* Compl. 3.) Evidence offered by Defendants, however, suggests that Officer Robbins broke Plaintiff's finger while handcuffing him.

[ECF 36].) In support of their motion, they offer the following evidence concerning the administrative exhaustion procedures at ROSP and Plaintiff's exhaustion efforts.

The Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") § 866.1, "Offender Grievance Procedure," sets forth the procedure used to resolve inmate complaints, appeal administrative decisions, and challenge the substance of prison procedures. (*See* Aff. of T. Still ¶¶ 4–9 & Encl. A [ECF No. 36-1]). Before an inmate may submit a formal grievance, OP 866.1 requires him to demonstrate that he has made a good-faith effort to informally resolve his complaint. (Aff. of T. Still ¶ 6.) He may do so by submitting an Informal Complaint form to the appropriate department head. (*Id.*) Prison staff are to provide a written response on the complaint form within 15 days of its filing. (*Id.*) If the inmate is dissatisfied with the response, he can submit a Regular Grievance on the issue within 30 days of the event about which he is complaining. (*Id.*) To do so, he must attach the required documentation from his informal attempt to resolve the issue to the Regular Grievance. (*Id.*)

A Regular Grievance that does not meet the filing requirements will be returned to the inmate within two business days of its receipt and will include the reason for the rejection and instructions on how to correct and resubmit the form, where feasible. (*Id.* ¶ 7.) If the inmate desires a review of the intake decision, he may send the returned grievance form to the Regional Ombudsman. (*Id.*) Pursuing an intake appeal of a rejected grievance, alone, does not constitute complete administrative exhaustion, but is merely a step toward exhaustion. (*Id.*)

If Regular Grievance is accepted for intake, there are three levels of review available. (*Id.* ¶ 8.) Level I reviews are performed by the Warden or Superintendent of the facility housing the inmate, and Level I responses are to be issued within 30 days. (*Id.*) An inmate who is not

satisfied with the outcome of his Level I review may appeal that decision to Level II. (*Id.*) Level II reviews are conducted by either the Regional Administrator, the Health Services Director, the Chief of Operations for Classification and Records, or the Superintendent for Education, and those responses must be issued within 20 days. (*Id.*) Level II is the highest level of appeal for most issues. (*Id.*) For the limited issues subject to Level III appeal, the Chief of Corrections or Director of the VDOC will conduct a final level of review within 20 days. (*Id.*) If the period for a response expires before any response is issued, the plaintiff may appeal to the next level. (*Id.*) Grievances must be appealed through all levels of available review to satisfy the exhaustion requirement prior to filing suit. (*Id.* ¶¶ 6, 10.)

Plaintiff submitted a Written Complaint on September 22, 2023, which ROSP's grievance department received on September 26, 2023, complaining that:

> On 9/15/23 I was passed out face down in my cell D-410 and when I came to I was shocked and be[a]t where I ended up with [a] black eye and more. I was then pulled out of my cell by leg restraints in the pod wh[ile] still being face down and my hands behind me and hands upon. Officer Robbins, A.C. then put hand cuffs on me and after that is when he broke my finger where I have had to be sent out and now have to have surgery. Everything I have just said is on your camera. I w[ould] like for this to be investigated.

(*See id.* ¶ 12 & Encl. B.) Major Hall responded to Plaintiff's complaint on September 28, 2023, stating that the incident had been sent to SIU. (*See id.*) Plaintiff did not file a Regular Grievance after receiving a response to his complaint. (*Id.* ¶ 13.)

On October 2, 2023, Plaintiff submitted another Written Complaint, this time complaining that he was supposed to be sent out for surgery within 30 days of his finger being broken, per the recommendation of an outside doctor, and that medical was delaying his

surgery. (*Id.* ¶ 14 & Encl. C.) The ROSP grievance department received this complaint on October 10, 2023, and RNCB D. Trent responded to the complaint on October 20, 2023, informing Plaintiff that his appointment had been scheduled and that the medical department has to take the appointment dates that are offered. (*Id.*) Again, Plaintiff did not file a Regular Grievance after receiving a response to his complaint. (*Id.* ¶ 15.)

On October 3, 2023, Plaintiff submitted a third Written Complaint, complaining that:

> The Building manager for D-Building told me he [is] going to get me for the officers that broke my finger. I don't feel safe and feel like they [are] going to get me. They are working together to try to get me in C-Building.

(*Id.* ¶ 16 & Encl. D.) The grievance department received the complaint on October 10, 2023, and CHAP A. Duncan responded to the complaint on October 19, 2023, indicating that the officers involved denied the allegations and that he found no evidence to support them. (*Id.*) Once again, Plaintiff did not to file a Regular Grievance after receiving a response to his third complaint. (*Id.* ¶ 17.)

On October 15, 2023, Plaintiff filed a Written Complaint complaining that he had still not received any response to his October 2, 2023 and October 3, 2023 complaints and reiterating his concerns about scheduling his surgery. (*Id.* ¶ 18 & Encl. E.) This complaint was received by the grievance department on October 20, 2023. (*Id.*) A response issued stating that Plaintiff was scheduled to see a specialist, though the response was not signed or dated. (*Id.*) Plaintiff did not file a Regular Grievance on the issues contained in his October 15, 2023 complaint. (*Id.* ¶ 19.)

Thereafter, Plaintiff filed a fifth Written Complaint, which was received by the grievance department on October 19, 2023. (*Id.* ¶ 20 & Encl. F.) In this complaint, he stated

that Officer Mills, who was involved in the September 15, 2023 incident that led to Plaintiff's broken finger, came to his pod and threatened him. (*Id.*) Sgt. Taylor responded to this complaint on October 24, 2023, stating that he had spoken with Officer Mills and that Mills denied making any threats toward Plaintiff. (*Id.*) Again, Plaintiff did not file a Regular Grievance after receiving a response to the complaint. (*Id.* ¶ 21.)

On February 5, 2024, Plaintiff filed two Written Complaints. (*Id.* ¶¶ 22, 24 & Encls. G, H.) In the first, he stated:

> I w[ould] like yall to have all body camera and any more camera evidence[] pertaining to me being pulled out of my cell and my finger being broken on 9/15/23 at 10:00 AM in D-4 cell 10. Noted this evidence is pertaining to my legal matter.

(*Id.* ¶ 22 & Encl. G.) His second February 5, 2024 complaint contained identical language. (*Id.* ¶ 24 & Encl. H.) The ROSP grievance department received both complaints on February 9, 2024. (*Id.* ¶¶ 22, 24 & Encls. G, H.) Intel Officer Shirks responded to the first of these complaints on February 10, 2024, indicating that footage from all activated body cameras and the "MaxPro camera system" pertaining to the September 15, 2023 incident had been saved. (*Id.* ¶ 22 & Encl. G.) Institutional Ombudsman T. Still responded to the second on February 9, 2024, repeating the response to Plaintiff's first February 5, 2024 complaint. (*Id.* ¶ 24 & Encl. H.) Plaintiff did not file a Regular Grievance related to either of his February 5, 2024 complaints. (*Id.* ¶¶ 23, 25.)

In response to the Moving Defendants' motion for summary judgment, Plaintiff filed an affidavit emphasizing that his claims are against the individual defendants and not the Virginia Department of Corrections and stating that "the complaint process of the facility was regardless of the response given by the department of corrections." (Pl.'s Resp. in Opp'n to

Defs.' Mot. for Summ. J. [ECF No. 38].) The Moving Defendants replied and renewed their exhaustion arguments. (*See* Reply in Supp. of Defs.' Mot. for Summ. J. [ECF No. 39].) Defendants' motion for summary judgment is now ripe for review.

## II.

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

### III.

The Moving Defendants seek summary judgment on Plaintiff's claims against them on the grounds that Plaintiff failed to exhaust available administrative remedies before filing this action. (*See* Defs.' Memo. in Supp. of Mot. for Summ. J. 11–14.)

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust all available remedies before filing lawsuits challenging prison conditions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To adequately exhaust administrative remedies in accordance with the PLRA, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)) Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 216.

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*, 578 U.S. at 642). An administrative remedy is unavailable, and thus the PLRA does not require exhaustion, if the would-be remedy is "officially on the books" but is not "capable of use to obtain relief." *Moss*, 19 F.4th at 621 (quoting *Ross*, 578 U.S. at 643). A prisoner may demonstrate that an administrative remedy is "unavailable" by showing that (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"), (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"), or (3) "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44.

To satisfy the PLRA's exhaustion requirement, a Virginia inmate must complete the grievance procedure through the highest level of available review. (Aff. of T. Still ¶¶ 9–10.) Only an inmate who receives an unfavorable decision at final level of appeal before filing suit has sufficiently exhausted administrative remedies in accordance with the PLRA. (*Id.*) Here, it is undisputed that Plaintiff did not fully exhaust any of his claims before filing this action. His filing of informal written complaints, without following those complaints up with timely grievances and appeals, does not satisfy the PLRA's exhaustion requirement. Because no reasonably jury would find that Plaintiff exhausted his administrative remedies before filing

suit, the Moving Defendants are entitled to summary judgment on Plaintiff's claims against them.

## IV.

For the reasons set forth above, the court will grant the Moving Defendants' motion and enter summary judgment in their favor on all claims against them.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of September, 2025.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE